UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Canaan X L.P., *et al.*,

                Plaintiffs,

    v.

MoneyLion Inc., *et al.*,

                Defendants.

Case No. 1:23-cv-06550-PKC

**ORAL ARGUMENT REQUESTED**

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS COMPLAINT

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants*

Dated: December 20, 2023

## TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS FAIL TO STATE A SECTION 14(a) CLAIM............................................ 2

    A. Plaintiffs Fail to Identify Any False or Misleading Statement in the Proxy............ 2
    B. Plaintiffs Fail to Allege Materiality and Causation as a Matter of Law ................. 5

II. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW ........................ 8

    A. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ................................ 8
    B. Plaintiffs Fail to Plead Any Breach of the Certificate of Designations ................. 9
    C. Plaintiffs Do Not Oppose Dismissal of Their Declaratory Judgment Claim........ 10

CONCLUSION............................................................................................................................. 10

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) ............................................................................... 2, 4

*Bond Opportunity Fund v. Unilab Corp.*,
   2003 WL 21058251 (S.D.N.Y. May 9, 2003) ......................................................................... 4

*In re Bystolic Antitr. Litig.*,
   583 F. Supp. 3d 455 (S.D.N.Y. 2022) ..................................................................................... 7

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
   2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ....................................................................... 6

*Equity-Linked Invs., L.P. v. Adams*,
   705 A.2d 1040 (Del. Ch. 1997) ............................................................................................... 9

*Glaxo Group Ltd. v. DRIT LP*,
   248 A.3d 911 (Del. 2021) ...................................................................................................... 10

*Greenmont Cap. Partners I, LP v. Mary's Gone Crackers, Inc.*,
   2012 WL 4479999 (Del. Ch. Sept. 28, 2012) ...................................................................... 10

*Hansen v. Wwebnet, Inc.*,
   2015 WL 4605670 (S.D.N.Y. July 31, 2015) ........................................................................ 7

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) .................................................................................................... 4

*Laurenzano v. Einbender*,
   448 F.2d 1 (2d Cir. 1971) ........................................................................................................ 6

*Lewis v. Potlatch Corp.*,
   716 F. Supp. 807 (S.D.N.Y. 1989) ..................................................................................... 5, 6

*Maldonado v. Flynn*,
   597 F.2d 789 (2d Cir. 1979) .................................................................................................... 6

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ...................................................................................................... 9

*Mendell v. Greenberg*,
   927 F.2d 667 (2d Cir.), *amended by* 938 F.2d 1528 (2d Cir. 1990) ...................................... 6

*Rubenstein ex.rel. Jefferies Fin. Grp. Inc. v. Adamany*,
   2023 WL 6119810 (2d Cir. Sept. 19, 2023) .......................................................................... 8

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
   75 F.3d 801, 812 (2d Cir. 1996) ............................................................................................. 4

*Silberstein v. Aetna, Inc.*,
    2015 WL 1424058 (S.D.N.Y. Mar. 26, 2015) ................................................................. 5, 6

## STATUTES & RULES

8 Del. C. § 102(b)(7) ......................................................................................................  9

## **PRELIMINARY STATEMENT**

As made clear in Defendants' motion to dismiss (the "Motion" or "Mot."), this action is a transparent gambit by Plaintiffs—sophisticated, well-counseled financial institutions—to rewrite the contract that governed the terms of their MoneyLion Preferred Stock.[1] That contract permitted reverse stock splits and included certain adjustments for such a possibility. But Plaintiffs failed to bargain for any such adjustment to the $10.00 per share trigger price that governed when their preferred shares would automatically convert to Common Stock. Thus, over a month after MoneyLion's Board decided to effect a 1-for-30 reverse stock split in April 2023, and after MoneyLion's Common Stock exceeded $10.00 per share for the requisite period, an Automatic Conversion Event took place—exactly as Plaintiffs negotiated and as the contract provided. Unhappy with that outcome, Plaintiffs now try to make up for their bargaining failure through a host of misguided claims. But their opposition to the Motion (the "Opposition" or "Opp.") does nothing to solve the fatal flaws that require dismissal of those claims.

First, Plaintiffs' attempt to plead a federal securities claim under Section 14(a) fails. Their assertion that the Proxy failed to disclose the impact of and purported motivations behind the Reverse Stock Split improperly conflates the Proxy's request for stockholder authorization to undertake a reverse stock split within a wide range of potential ratios, with the decision weeks later to use a 1-for-30 ratio. That later decision cannot render any statement in the Proxy false or misleading at the time it was made. Nor would disclosure of Defendants' alleged motivations have been material where all objective material facts about the reverse split and its potential impacts were disclosed in the Proxy or readily available publicly. And Plaintiffs cannot plead causation where the proximate cause of their alleged harm was not any Proxy disclosure, but

---

[1] Capitalized terms used but not defined herein have the meanings ascribed in the Motion. Citations to "Ex. __" are to the exhibits to the Declaration of Brian M. Burnovski filed with the Motion (ECF No. 56-1) or the Reply Declaration of Brian M. Burnovski, filed contemporaneously herewith.

1

rather, according to the Complaint, intervening events, including the Board's later decision to select a 1-for-30 ratio, the subsequent trading price of MoneyLion's Common Stock (over which Defendants had no control) and the self-executing operation of the conversion provision.

Given the absence of a well-pled federal claim, the Court should decline to exercise jurisdiction over Plaintiffs' state-law claims.  Even if the Court reaches those claims, however, they likewise fail on the merits.  As to the fiduciary duty claim, Plaintiffs' attempt to reframe it as resting on duties of candor and loyalty owed to all stockholders ignores that it remains fundamentally based on alleged actions to deprive *preferred stockholders* of their contractual rights, which is not a breach of duty under Delaware law.  Nor in any event did Defendants fail to disclose any material information.  Plaintiffs' contract claim fails because the Certificate of Designations functioned exactly as drafted.  Because Plaintiffs' rights were not modified or infringed, they were not entitled to a separate class vote under any express or implied terms of the contract.  Finally, the Opposition abandons Plaintiffs' improper declaratory judgment claim.

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A SECTION 14(a) CLAIM

Nothing in the Opposition alters the conclusion that Plaintiffs fail to plead the required elements of a Section 14(a) claim, including falsity, materiality and causation.  Mot. 7-18.[2]

#### A. Plaintiffs Fail to Identify Any False or Misleading Statement in the Proxy

As set forth in the Motion, the Complaint fails to allege any false or misleading statement in the Proxy.  Mot. 7-12.  The Opposition fails to show otherwise.

---

[2] In addition to the issues addressed below, the Section 14(a) claim must be dismissed as to Mr. Correia because he is not alleged to have participated in the challenged Proxy solicitation. *Id.* at 7.  Section 14(a) liability "attaches only to defendants who actually solicited proxies or permitted the use of their name to solicit proxies." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010) (Castel, J.).  Plaintiffs do not allege that Mr. Correia did so, which is fatal to their claim against him.  That Mr. Correia was listed in the Proxy as a MoneyLion officer is irrelevant. *See id.* at 293-295 (dismissing Section 14(a) claim against officer defendant, where he was mentioned in proxy but not alleged to have had "control over the contents" thereof, nor did his name even "appear[] within the context of a challenged statement").

2

There was nothing false or misleading about the statement that "the Reverse Stock Split will affect all stockholders uniformly and will not affect any stockholder's percentage ownership interest in the Company." Mot. 8-9; Ex. A at 9. That statement did not address the rights of preferred stockholders. Mot. 8-9. Regardless, the Opposition does not even address, much less rebut, the fact that all stockholders, including preferred stockholders (on an as-converted-to-Common-Stock basis), owned the same percentage of MoneyLion equity before and after the Reverse Stock Split (other than de minimis adjustments, as disclosed)—rendering the challenged statement undeniably true. That fact alone requires dismissal as to that statement.[3]

Likewise, Plaintiffs fail to show an actionably false or misleading statement based on the disclosure that the Reverse Stock Split was "not intended to modify the rights of existing stockholders in any material respect." Mot. 9-12; Ex. A at 7. To be sure, the split did *not* modify any preferred rights. Plaintiffs' assertion of falsity hinges on an alleged statement by Messrs. Choubey and Correia during a June 8, 2023 meeting that the decision to use a 1-for-30 ratio for the split was supposedly motivated by a desire to cause an Automatic Conversion. But even if credited, *see* Mot. 10 n.3, that disputed allegation does not support a claim. Mot. 9-12.

*First*, Plaintiffs fail to overcome the temporal disconnect in their theory: the Proxy sought approval to effect a reverse stock split within a wide range of potential ratios and included disclosures about the potential split *generally*, while the alleged June 8 statement concerned the Board's *subsequent* decision on April 21—nearly a month after the Proxy was issued—to effect the reverse split *specifically* at a 1-for-30 ratio. Regardless of the alleged intent behind the

---

[3] Relying on the *expressio unius* canon, Plaintiffs argue that references to Common Stock before and after the challenged statement undermine Defendants' argument, as the statement itself refers to "stockholders" generally. Opp. 8-9. That argument is unavailing. Far from being susceptible to "more than one plausible interpretation," *id.* at 9, given the references to Common Stock before and after the challenged statement—including that the "voting rights and other rights and preferences of the *holders of Class A Common Stock* will not be affected by the Reverse Stock Split," Ex. A at 9; Mot. 8-9—the challenged statement could not reasonably have been interpreted to say *anything* about the rights or preferences of preferred stockholders in their capacities as such. That is particularly true when the entire relevant paragraph, read in context, is simply addressing the impact of the split on the *number* of outstanding shares of Common Stock. Plaintiffs' attempt at cherry picking should be rejected.

Board's decision in that regard, that later decision could not render any statement in the Proxy false or misleading "at the time that it was made." *In re Bank of Am.Corp.*, 757 F. Supp. 2d at 288; *see also* Ex. A at 9 ("[T]here will be no immediate impact on our stockholders until the Board of Directors determines to implement the Reverse Stock Split.").

Tellingly, Plaintiffs cite no authority for the proposition that statements in a proxy could be rendered false or misleading on account of subsequent board decisions not yet made or a purported intent not yet formulated. Nor could they, as "liability cannot be imposed on the basis of subsequent events." *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *10 (S.D.N.Y. May 9, 2003) (citation omitted). Instead, Plaintiffs dispute the premise of the argument—contending that the timing of the selection of the 1-for-30 ratio is an "assertion of purported (and disputed) fact." Opp. 10. Not so. Plaintiffs simply ignore—as set forth in the Motion (Mot. 10 & n.4)—the Complaint's own allegation that the Board made the decision on April 21, well after the Proxy was issued, Compl. ¶ 38, and disclosures in the Proxy making clear that the Board had not yet decided on a ratio as of the Proxy's issuance, *e.g.*, Ex. A at 11-12. Contrary to Plaintiffs' bald assertion, there is not a single factual allegation creating a dispute on that point. Plaintiffs rely solely on the alleged June 8 statement by Messrs. Choubey and Correia. Compl. ¶ 41; Opp. 10. But there is no allegation that either individual said anything at all during that meeting (or otherwise) about *when* the Board decided upon a 1-for-30 ratio, much less that such a decision was already made at the time the Proxy was issued.[4]

*Second*, Plaintiffs' fail to overcome the fact that Defendants had no control over

---

[4] To the extent Plaintiffs invite this Court to infer, based on timing, that the decision was made as of the Proxy's issuance, Opp. 10 (referring to "prompt timing"), that should be rejected. The Court should not accept inferences that are contradicted by specific allegations and documents incorporated into the Complaint. *See, e.g.*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Moreover, temporal proximity alone does not suffice to support an inference of falsity. *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) (plaintiffs had not sufficiently pleaded falsity of representation that sales were strong based on later disclosure made three weeks after challenged statement).

MoneyLion's stock price and could not have known the likelihood of an Automatic Conversion Event at the time of the Proxy. Mot. 10-12. Plaintiffs concede there was no assurance that an Automatic Conversion Event would take place after a 1-for-30 reverse split, Opp. 10-11, and, conversely, do not dispute that an Automatic Conversion Event still could (and likely would) have taken place even if a lower ratio had been selected, Mot. 12 n.6.[5] That is fatal to any notion that Defendants "knew or should have known that the Reverse Stock Split" would trigger an Automatic Conversion, as Plaintiffs allege. Compl. ¶ 59. It also illustrates why it would have been misleading for MoneyLion to have tried to predict in the Proxy the likelihood of an Automatic Conversion Event, which was by no means guaranteed, or even likely, at the time of issuance. Indeed, although MoneyLion's Common Stock has traded up recently, the stock traded down for an extended period before that (including in the wake of the Proxy vote), as Plaintiffs note, Opp. 4—and could have continued to do so after the Reverse Stock Split, consistent with the fact that the stock traded *below* $10.00 for a number of days after the split, Mot. 11-12.

### B. Plaintiffs Fail to Allege Materiality and Causation as a Matter of Law

Plaintiffs also fail to plead as a matter of law both materiality (Mot. 12-14) and causation (*id.* at 14-18). Again, the Opposition fails to show otherwise.

*Materiality*. As an initial matter, to the extent Plaintiffs suggest that materiality can never "be resolved on a motion to dismiss," Opp. 11, that ignores cases doing just that, Mot. 12-14. *See, e.g.*, *Silberstein v. Aetna, Inc.*, 2015 WL 1424058, at *12-*15 (S.D.N.Y. Mar. 26, 2015); *Lewis v. Potlatch Corp.*, 716 F. Supp. 807, 809-11 (S.D.N.Y. 1989). That courts have determined in other cases, involving different facts, that materiality could not be decided at the pleading stage, Opp. 11, is of no import. Here, Plaintiffs challenge a disclosure regarding the

---

[5] Since the Motion was filed, MoneyLion's Common Stock has traded *above $33.00 per share* for 20 out of 30 consecutive trading days (and over $40.00 for nearly that time, closing at $51.41 yesterday). Ex. F. Thus, even at a lower reverse stock split ratio of 1-for-10—substantially less than the ratio Plaintiffs suggest would have been more appropriate, Mot. 12 n.6; Compl. ¶ 66—an Automatic Conversion Event still could have occurred.

impact and motivations behind a reverse stock split, where the nature and potential consequences of the transaction were readily apparent from the face of the Proxy and other publicly available documents—presenting a textbook case where immateriality can be decided as a matter of law.

Plaintiffs offer no meaningful basis to distinguish the many authorities holding that a corporation's purported motivations for a proposed transaction are immaterial as a matter of law where, as here, all material facts about the transaction, its terms, and its consequences are disclosed in the Proxy or readily available publicly. Mot. 13-14.[6] Plaintiffs assert that, although stockholders "might have understood the Automatic Conversion mechanism . . . none would have 'speculated' that the Reverse Stock Split would trigger it, because Defendants' statements supposedly "negated that possibility." Opp. 12. That is preposterous. Defendants' statements—which were indisputably true—could not have "negated th[e] possibility" of an event that was concededly not assured and indisputably beyond Defendants' control. *Supra* at 4-5.

Equally unavailing is Plaintiffs' assertion that common stockholders would have wanted to know that their vote purportedly "was being sought for the purpose of stripping rights from a group of other shareholders," which could invite adverse consequences, such as potential legal exposure, adverse publicity, and alienation of supposedly "well-known" preferred stockholders. To begin, as explained above, there is no well-pled allegation that, *at the time stockholders' votes were sought*, any decision had been made to effect a reverse stock split at a 1-for-30 ratio for the alleged purposes of which Plaintiffs complain. *Supra* at 3-4. Moreover, Plaintiffs' assertion is

---

[6] Plaintiffs simply ignore the decisions and/or propositions of law set forth in *Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir. 1979), *Laurenzano v. Einbender*, 448 F.2d 1, 5 (2d Cir. 1971), *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *13 (S.D.N.Y. Sept. 27, 2021), and *Silberstein*, 2015 WL 1424058, at *13. And their attempt to distinguish *Lewis*, 716 F. Supp. at 809, rests on the conclusory assertion that here, unlike in that case, Defendants "failed to provide the 'total mix' of facts that would have been relevant," Opp. 13 n.5, while offering no plausible reason *why* Defendants' alleged motivations would have been relevant. Plaintiffs' assertion that a proxy should make "no concealment of the purposes for the proposals it advocates," Opp. 12, ignores that the very source of that quotation, *Mendell v. Greenberg*, 927 F.2d 667, 674 (2d Cir.), *amended*, 938 F.2d 1528 (2d Cir. 1990), also explained that "[a] proxy statement need not disclose the underlying motivations of a director or major shareholder so long as all the *objective* material facts relating to the transaction are disclosed." *Id.* at 674 (emphasis added). Here, Plaintiffs identify no "objective material facts" that were not disclosed.

6

belied by allegations elsewhere in the Complaint that common stockholders would have had every economic incentive to approve any reverse stock split purportedly intended to eliminate preferred stockholders' rights. *See, e.g.*, Compl. ¶¶ 47, 52, 69.[7] In any event, the potential adverse consequences Plaintiffs now posit are not alleged in the Complaint, and it is "axiomatic" that a complaint "cannot be amended by the briefs in opposition to a motion to dismiss." *In re Bystolic Antitr. Litig.*, 583 F. Supp. 3d 455, 489 (S.D.N.Y. 2022).

*Causation*. As for loss causation, the Opposition fails to show that Plaintiffs' alleged loss was the result of any action or disclosure by Defendants, as opposed to the bargained-for terms of the Certificate of Designations, which provided for automatic conversion of the Preferred Stock if certain trading thresholds were met. Mot. 14-17. Plaintiffs argue that the "Certificate of Designations functioned to Plaintiffs' detriment only as a result of Defendants having artificially manipulated MoneyLion's common stock, which was supposedly not contemplated in the Certificate of Designations." Opp. 13-14. But Plaintiffs' pejorative and misleading rhetoric aside, that is simply untrue: The contract expressly contemplated and permitted reverse stock splits, and provided for a related adjustment in the conversion rate of the Preferred Stock to Common Stock in such an event. Mot. 4-5; Ex. C §§ 3, 10. Plaintiffs' failure to bargain for a similar adjustment to the $10.00 trigger for an Automatic Conversion Event does not render the impact of the Reverse Stock Split "artificial" or "manipulative."

Plaintiffs assert that there is a proximate causal connection between the Reverse Stock Split and the Automatic Conversion, arguing that the latter was a reasonably foreseeable

---

[7] Indeed, while suggesting that other common stockholders would have readily rejected the Reverse Stock Split if they only knew Defendants' supposedly "true" goals, Plaintiffs simultaneously allege that the director Defendants were purportedly so profoundly conflicted on account of their ownership of Common Stock and the benefits they allegedly would have received from the Reverse Stock Split that they supposedly should have formed a special committee to consider the Reverse Stock Split, Compl. ¶¶ 48. 52, 69. Such positions are inherently contradictory and, thus, need not be credited. *Hansen v. Wwebnet, Inc.*, 2015 WL 4605670, at *3 n.1 (S.D.N.Y. July 31, 2015) (when allegations are directly contradictory, courts need not accept either as true).

consequence of selecting a 1-for-30 ratio. Opp. 14-15. But even assuming the truth of their baseless allegations regarding the underlying motive for that decision, that argument still fails. As explained above, *supra* at 1-2, it improperly conflates the Proxy's request of stockholders to authorize a reverse stock split within a wide range of potential ratios, with the Board's subsequent decision, weeks later, to effect a split at what Plaintiffs describe as a "higher-than-necessary ratio." Opp. 1. Nor does that argument account for the fact that the actual trigger of the Automatic Conversion Event was the trading price of MoneyLion's Common Stock, over which Defendants had no control. Plaintiffs ignore the Second Circuit's decision in *Rubenstein ex. rel. Jefferies Fin. Grp. Inc. v. Adamany*, 2023 WL 6119810 (2d Cir. Sept. 19, 2023), which is directly on point and makes clear that such intervening circumstances break the causal chain and foreclose Plaintiffs' ability to plead loss causation. Mot. 16-17.

As for transaction causation, Plaintiffs misrepresent Defendants' argument. *See* Opp. 15. Nowhere do Defendants contend that Plaintiffs must affirmatively prove transaction causation at this stage. But they must plausibly allege it, and the contents of the Complaint and MoneyLion's judicially noticeable SEC filings make clear that is simply impossible. Plaintiffs make no effort to explain how their votes (or even the votes of *all* Preferred Stockholders) could have altered the outcome of the Proxy vote. *See* Mot. 17-18. That alone is fatal. Instead, they offer only the bald assertion that common stockholders might have voted differently if they were told that the Reverse Stock Split might trigger an Automatic Conversion Event that would "alienate" and anger Plaintiffs. Opp. 15. For the reasons above, that implausible assertion—not alleged in the Complaint itself and contradicted by other allegations therein—is unavailing. *Supra* at 6-7.

## II. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

Effectively conceding that the Individual Defendants did not owe Plaintiffs fiduciary

8

duties in connection with claims related specifically to the contractual rights and preferences of the Preferred Stock, Mot. 19-21, Plaintiffs attempt to reframe their claim as being solely about a duty of disclosure owed to all stockholders, Opp. 15-17. That argument still fails.

*First*, despite Plaintiffs' attempt to ground their claim in a duty of loyalty owed to all stockholders, Opp. 17,[8] the crux of the claim remains Defendants' alleged effort to deprive *preferred stockholders* of their rights. The purported "conflict" Defendants faced, *id.* at 16, was that they allegedly stood to benefit from the elimination of the preferred stockholders' contractual rights on account of their *ownership of Common Stock*. Yet accepting that narrative as true for present purposes, it does not suggest a breach of the duty of loyalty: Under Delaware law, "generally it will be the duty of the board, where discretionary judgment is to be exercised, to prefer the interests of the common stock—as the good faith judgment of the board sees them to be—to the interests created by the special rights, preferences, *etc.* of preferred stock." *Equity-Linked Invs., L.P. v. Adams*, 705 A.2d 1040, 1042 (Del. Ch. 1997).

*Second*, even putting aside that fatal flaw in Plaintiffs' reformulated theory, for the reasons explained above in connection with the Section 14(a) claim, Defendants discharged their duty of candor by disclosing all "material" information to stockholders in the Proxy; there was no obligation to disclose anything more. *Supra* at 5-6.

### B. Plaintiffs Fail to Plead Any Breach of the Certificate of Designations

As explained in the Motion, Plaintiffs have not made out a viable claim for either an express breach of contract or a breach of the implied covenant. Mot. 21-25.

The Opposition effectively concedes the lack of an express breach of the Certificate of Designations, acknowledging, as they must, that Defendants' alleged conduct did not actually

---

[8] In light of the exculpatory provision in MoneyLion's Certificate of Incorporation, Ex. G, Art. 8; 8 Del. C. § 102(b)(7), Plaintiffs are barred from pursuing claims for money damages based on any alleged breach of the duty of care. *See, e.g., Malpiede v. Townson*, 780 A.2d 1075, 1079 (Del. 2001).

alter Plaintiffs' rights, but somehow did so "for all practical purposes." Opp. 18. That assertion is both wrong for the reasons in the Motion, Mot. 21-23, and insufficient.[9]

Nor do Plaintiffs offer any valid argument to save their implied covenant claim. Mot. 23-25. Seeking to create a nonexistent gap in the Certificate of Designations for the implied covenant to fill, Plaintiffs argue that it was intended that the Preferred Stock would only convert based on "natural market fluctuations, not some self-interested manipulation by Defendants." Opp. 19. But again, that ignores that the contract expressly contemplated the possibility of reverse stock splits. *Supra* at 7. In effecting a reverse stock split, Defendants exercised rights expressly contemplated and permitted by the Certificate of Designations and, accordingly, the implied covenant has no role to play. *See Glaxo Group Ltd. v. DRIT LP*, 248 A.3d 911, 920-21 (Del. 2021) (implied covenant "should not be used to imply terms that modify or negate an unrestricted contractual right authorized by an agreement"). That Defendants purportedly intended that the Preferred Stock would subsequently convert into Common Stock (automatically and on exactly the terms Plaintiffs negotiated, as a result of MoneyLion's trading price) is simply irrelevant. "The time to demand restrictions on an express contractual right was during negotiations—not years later through the implied covenant." *Id.* at 920.

### C. Plaintiffs Do Not Oppose Dismissal of Their Declaratory Judgment Claim

Plaintiffs acknowledge that their duplicative declaratory judgment claim serves no useful purpose and expressly consent to its dismissal. Opp. 20.

### CONCLUSION

For the foregoing reasons, and those in the Motion, the Defendants respectfully request that the Court grant the Motion and dismiss Plaintiffs' Complaint with prejudice.

---

[9] Indeed, *Greenmont Cap. Partners I, LP v. Mary's Gone Crackers, Inc.*, 2012 WL 4479999 (Del. Ch. Sept. 28, 2012), forecloses Plaintiffs' express breach claim. Mot. 22-23. Plaintiffs fail to meaningfully distinguish the case. Opp. 18 n.9. Here, just as in *Greenmont*, Defendants observed the "precise mechanisms agreed to by the parties in the certificate in question," *id.*, under which Plaintiffs were not entitled to any separate class vote.

Dated:     New York, New York
           December 20, 2023

                                         **DAVIS POLK & WARDWELL LLP**

                                         By:    */s/ Brian M. Burnovski*
                                                Brian M. Burnovski

                                         450 Lexington Avenue
                                         New York, New York 10017
                                         (212) 450-4000
                                         brian.burnovski@davispolk.com
                                         adam.greene@davispolk.com

                                         *Attorneys for Defendants*